FILED

2013 May-21  PM 04:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARK and ROBIN COSTINE, | ) | |
| | ) | |
| Plaintiffs; | ) | |
| | ) | |
| vs. | ) | 2:12-cv-3722-LSC |
| | ) | |
| BAC HOME LOANS and BANK | ) | |
| OF AMERICA, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.      Introduction

Before the Court is a Motion to Dismiss, filed by the defendant, Bank of America, N.A. ("BANA" or "Defendant"[1]). (Doc. 10.) The issues raised in Defendant's motion have been fully briefed by all parties, and are now ripe for decision. For the reasons described below, Defendant's Motion to Dismiss is due to be GRANTED in part, DENIED in part, and partially DEFERRED to allow Plaintiffs an opportunity to amend their complaint.

### II.      Background

---

[1] Bank of America, N.A. is the successor by merger to BAC Home Loans Servicing, LP. Although both entities are named as defendants, because Bank of America, N.A. and BAC Home Loans are now a single, consolidated entity, this Court will refer only to BANA as the defendant.

## A.    Procedural History

Mark and Robin Costine ("Plaintiffs"), along with four other unrelated couples, originally filed an action against BANA on March 14, 2012. *See* Doc. 1 in *Prickett v. BAC Homeloans Servicing, LP*, 2:12-cv-826-LSC. On June 4, 2012, BANA moved to dismiss every claim by all ten plaintiffs under Federal Rule of Civil Procedure 12(b)(6). Before ruling on BANA's motion, the Court determined, after seeking input from the parties, that the ten plaintiffs were improperly joined under Federal Rule of Civil Procedure 20(a). Accordingly, the Court ordered the original action severed into five independent cases, mooted BANA's first motion to dismiss, and instructed Plaintiffs to file an amended complaint setting out only their individualized claims for relief in this newly created action. Pursuant to the Court's directive, Plaintiffs filed an amended complaint on January 14, 2013 (the "Complaint"). (Doc. 9.) In the Complaint, Plaintiffs allege that after they defaulted or encountered difficulties meeting obligations on their mortgage, BANA improperly serviced their loan and defectively processed their modification application. Based on these alleged improprieties, Plaintiffs assert nine separate causes of action: (1) breach of contract; (2) slander of title; (3) unjust enrichment; (4) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (5) violation of the Real

Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*; (6) "negligence per se"; (7) negligent hiring/training; (8) breach of fiduciary duty; and (9) intentional infliction of emotional distress. BANA renewed its Motion to Dismiss on February 13, 2013, asking the Court to dismiss all eleven claims for relief set out in the Complaint. (Doc. 10.)

**B.     Facts**[2]

Plaintiffs purchased their home with an FHA-insured mortgage loan in April 2007. (Doc. 9 ¶ 9.) Plaintiffs' financial situation turned bleak in the fall of 2009, when their uninsured son was involved in a serious automobile accident resulting in substantial medical expenses. (*Id.* ¶ 10.) As a result of their son's medical bills, Plaintiffs allege they fell behind on their mortgage payments and contacted BANA to request a loan modification. (*Id.* ¶ 11.)

In November 2009, Plaintiffs were informed over the phone that they had been approved for a modification and that collection activities would be suspended. (*Id.* ¶ 13.) However, Plaintiffs did not receive any specific information about the modification at that time, but rather allege they were told to expect a package in the

---

[2] For purposes of this opinion, the facts are accepted as alleged in Plaintiffs' Complaint. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Recitation of the facts alleged by Plaintiffs is not to be construed as a verification that the allegations are true.

mail, as well as a phone call from a workout negotiator, with details about the modification. (*Id.*) Not having heard from BANA in the allotted time, Plaintiffs contacted BANA on January 6, 2010, to inquire about the status of their modification. (*Id.* ¶ 14.) They allege that a BANA representative once again confirmed they had been approved for a modification and that they should continue to wait for BANA to provide additional details by phone and/or mail. (*Id.* ¶ 14–15.)

Plaintiffs allege they resumed making their "pre-modification monthly mortgage payment" at some unspecified time when they did not receive the paperwork or the phone call as promised. (*Id.* ¶ 16.) They claim that BANA initially accepted these payments, but posted them "erratically in large lump sums with seemingly no relationship to when they were sent." (*Id.* ¶ 17.) During this period, Plaintiffs claim they spent "hundreds of hours" on the phone with BANA representatives, who provided conflicting reports about the status of their modification. (*Id.* ¶ 18–19.) Although they were often told their modification was complete, they also were repeatedly asked to resubmit their application, which they allege to have done on six separate occasions. (*Id.* ¶ 19–20.) In April 2011, BANA refused to accept further mortgage payments from Plaintiffs. (*Id.* ¶ 22–23.) Plaintiffs' allege BANA refused to accept these payments even though the payment history for

the account, attached as Exhibit 2 to the Complaint, shows that they paid more than the total amounts due in calendar year 2010, and in 2011 prior to BANA's refusal to accept further payments. (*Id.* ¶ 25–28; Doc. 9-1 at 3–9.)

## III.   Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In addition, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).[3] The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id*. at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id*.

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal

---

[3] In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.

conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682).

## IV.   Discussion

### A.   Count One: Breach of Contract

Count One of Plaintiffs' Complaint asserts a state law claim for breach of contract. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). Defendant argues Plaintiffs' breach of contract claim should be dismissed for two reasons: (1) it is insufficiently pled under Rule 8 and (2) the allegations of the Complaint demonstrate Plaintiffs' breached the contract first.

The Court's sole task at this point in the litigation is to evaluate whether

Plaintiffs' claim has satisfied the pleading standards. After considering the allegations in the Complaint, the Court finds Plaintiffs have sufficiently alleged a breach of contract to survive a Rule 12(b)(6) motion to dismiss. Plaintiffs have pled sufficient factual content for the court to infer that a mortgage agreement existed and that Defendant breached it by not properly applying payments and assessing unwarranted fees. (Doc. 9 ¶ 31.) For these reasons, Defendant's motion to dismiss is due to be denied with respect to Count One.

### B.    Count Two: Slander of Title

Count Two of the Complaint asserts a state law claim for slander of title. The elements of slander of title under Alabama law are:

> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Merchants Nat. Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981) (citing *Womack v. McDonald*, 121 So. 57, 59 (1929)). Defendant contends that Plaintiffs failed to allege facts in the Complaint satisfying the elements of slander of title. Specifically, Defendant argues that Plaintiffs have not alleged publication to a third party, falsity of the publication, or that they suffered special damages.

While it is true that Plaintiffs' allegations with respect to their slander of title claim are lacking in detail, the Court finds the allegations are nonetheless sufficient to survive a motion to dismiss. Plaintiffs alleged that Defendant made a false publication to a third party. Specifically, they asserted that "Defendant has *wrongfully reported* Plaintiffs' mortgage as defaulted and in foreclosure to *the credit reporting agencies* as well as *advertising* multiple foreclosure sales." (Doc. 9 ¶ 35) (emphasis added). Additionally, Plaintiffs alleged particularized damages which resulted directly from the alleged wrongful publication. They claim that "Defendant's actions have damaged Plaintiffs' credit scores . . . ." (*Id.* ¶ 36.) The Court finds that these paragraphs allege a plausible slander of title claim sufficient to survive a motion to dismiss. Accordingly, Defendant's motion to dismiss is due to be denied with respect to Count Two.

C.    **Count Three: Unjust Enrichment**

Count Three of the Complaint asserts a state law claim for unjust enrichment. Defendant contends that Plaintiffs' unjust enrichment claim is due to be dismissed because such relief cannot be granted when a matter, such as this one, is governed by contract.  In *Vardaman v. Bd. of Educ.*, 544 So. 2d 962, 965 (Ala. 1989), the Alabama Supreme Court stated: "It has long been recognized in Alabama that the existence of an express contract generally excludes an implied agreement relative to the same

subject matter." Plaintiffs failed to offer any response to Defendant's argument, and therefore have abandoned their unjust enrichment claim. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *see also Evans v. Jefferson County Comm'n*, 2012 WL 1745610, at *10 (N.D. Ala. May 15, 2012); *McMaster v. United States*, 177 F.3d 936, 940-41 (11th Cir.1999) (noting that a claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but he fails to present any argument concerning this claim to the district court). For that reason, Defendant's motion to dismiss is granted with respect to Count Three.

### D.    Count Four: FDCPA Claim

Count Four of the Complaint alleges BANA violated the FDCPA by engaging in a pattern and practice of making false representations in an attempt to collect a debt. (Doc. 9 ¶ 47.) Defendant argues that Plaintiffs' FDCPA claim should be dismissed because the allegations in the complaint demonstrate that BANA is not a "debt collector" for purposes of the FDCPA.

To state a claim under the FDCPA, a plaintiff must establish, among other

things, that the defendant is a "debt collector." *Reese v. Ellis, Painter, Ratterree &* *Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir.2012). The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692(a)(6). While BANA may fit this description, 15 U.S.C. § 1692(a)(6)(F) excludes persons collecting a debt when the collection "concerns a debt which was not in default at the time it was obtained by such persons." Furthermore, the legislative history suggests that a mortgagee and its assignee, including mortgage servicing companies, are not debt collectors under the FDCPA when the debt is not in default at the time the mortgage-holder acquires the debt. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95–382, at 3–4 (1977)).

Defendant contends that the factual allegations in the Complaint clearly demonstrate that BANA is not a debt collector because the allegations show BANA began servicing Plaintiffs' loan before Plaintiffs first defaulted. Specifically, Defendant's point to paragraphs 9 through 11, wherein Plaintiffs state that the first time they fell behind on their loan was in the fall of 2009, and that they immediately "contacted [BANA] to request a loan modification." (Doc. 9 ¶ 11.) These allegations, even read in the light most favorable to the Plaintiffs, tend to demonstrate that BANA

was the loan servicer on Plaintiffs' mortgage at the time they first defaulted. And taking these allegations as true, it necessarily follows that BANA is not a debt collector as the term is defined in the FDCPA.

Plaintiffs respond to Defendant's argument by referencing, but not attaching, a letter allegedly in their possession which "inform[ed] them of the acquisition of their loan from Countrywide dated after the default." (Doc. 14 at 3.) As a procedural matter, the Court must reject Plaintiffs' argument because the supporting facts and documents are not pleaded in the Complaint itself, and are not even attached to or fully described in Plaintiffs' responsive brief. While at this stage in the proceeding the Court accepts as true all well-pleaded facts in the complaint, the Court must confine its review to those facts contained within the four corners of plaintiff's pleading. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (internal citation omitted) ("A court's review on a motion to dismiss is limited to the four corners of the complaint.").

Because Plaintiffs have failed to allege facts *in the Complaint* demonstrating that BANA is a "debt collector" within the meaning of the FDCPA, their FDCPA claim is subject to dismissal. However, rather than immediately dismissing Plaintiffs' claim, the Court will allow Plaintiffs an opportunity to amend their Complaint to allege facts

satisfying the elements of the cause of action which are currently lacking, if such facts exist. Plaintiffs are reminded that by filing an amendment, the party signing the filing certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). In other words, if the evidence does not support an amendment, none should be made. Plaintiffs have ten (10) days from the date of this Order to file their amendment. Failing to amend, the Court will enter an order dismissing Plaintiffs' FDCPA claim.

### E.    Count Five: RESPA

Plaintiffs allege that BANA is liable under RESPA because it failed to respond in a proper and timely way to Plaintiffs' "qualified written request" (QWR) for information related to their mortgage account. RESPA establishes certain actions which must be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquires. *See* 12 U.S.C. § 2605. Specifically at issue is § 2605(e), which provides that a loan servicer, upon receipt of a QWR, must provide "a written response acknowledging receipt of the correspondence" within 5 business days, *id*. § 2605(e)(1)(A), and must take action on the QWR within 30 days. *Id*. § 2605(e)(2). Defendant argues that Plaintiffs' RESPA

claim is due to be dismissed because Plaintiffs never alleged that they submitted a QWR and thus have not demonstrated that RESPA required a response.

A loan servicer's obligation to provide information under § 2605(e) only applies after it "receives a *qualified written request* from the borrow (or agent of the borrower)." 12 U.S.C. § 2605(e)(1)(A) (emphasis added). Accordingly, to adequately state a claim that a loan servicer violated its duty to timely respond under § 2605(e), a plaintiff must first allege that a QWR meeting the statutory definition was actually submitted. In their response, Plaintiffs contend that they "allege[d] the submission of a qualified written request in paragraph 56 of the Amended Complaint and imply the existence of the QWR in their factual allegations." (Doc. 14 at 1.) Paragraph 56 provides: "Defendant violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to make appropriate correction to the Plaintiff's account in response to the qualified written request . . . ." (Doc. 9 ¶ 56.)

The factual allegations cited do not adequately plead that a QWR was actually submitted. It is not enough to simply use the words "qualified written request" somewhere in the Complaint. Rather, Plaintiffs must plead facts demonstrating that a written request was actually made, such as by discussing the date the request was sent, how it was delivered, and describing its contents showing they satisfied the

requirements enumerated in 12 U.S.C. § 2605(e)(1)(B). Indeed, plaintiffs must make specific factual allegations showing that a written request was made, and that such request included the detail necessary to qualify under the statute. *See, e.g., Lucero v. Diversified Inv. Inc.*, 2010 WL 3463607, at *4 (S.D. Cal. August 31, 2010) ("[B]ecause [the plaintiffs] do not allege the contents of the QWR or attach it to their Complaint, it is unclear whether Plaintiffs included enough information for the servicer to identify them, or asked for information covered by 12 U.S.C. § 2605."); *Williams v. Am.'s Servicing Co.*, 2011 WL 1060652 (M.D. Fla. Mar. 22, 2011) (dismissing complaint because plaintiffs did not allege "when they sent the QWR . . . [or] that the QWR contained sufficient information to enable defendant to determine the 'name and account of the borrower'"); *Carrillo v. Bank of New York*, 2009 WL 5708925, at *4 (S.D. Fla. Dec. 22, 2009) (dismissing RESPA claim because plaintiff did not "allege to whom his request was addressed . . . [or] the subject matter of the written correspondence"); *Correa v. BAC Home Loans Servicing LP*, 2012 WL 1176701, at *7 (M.D. Fla. Apr. 9, 2012) (finding that a pro se plaintiff had "barely allege[d] sufficient facts" where she stated the date the correspondence was mailed, to whom it was addressed, and that it was labeled as a qualified written request).

The Supreme Court made clear in *Twombly* that "[a] formulaic recitation of the

elements of a cause of action" is not enough to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Rather, a plaintiff must set out "factual allegations" which are sufficient to "raise a right to relief above the speculative level." *Id*. Plaintiffs complaint is void of any facts establishing that a QWR was ever submitted to BANA, and accordingly, Plaintiffs have failed to adequately state a claim for relief under RESPA. However, rather than immediately dismissing Plaintiffs' claim, the Court will allow Plaintiffs an opportunity to amend their Complaint to allege facts satisfying the elements of the cause of action which are currently lacking. Specifically, if appropriate, Plaintiffs should allege facts demonstrating that a QWR was actually submitted to BANA satisfying the requirements set out in 12 U.S.C. § 2605(e)(1)(B). Plaintiffs are reminded that by filing an amendment, the party signing the filing certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). In other words, if the evidence does not support an amendment, none should be made. Plaintiffs have ten (10) days from the date of this Order to file their amendment. Failing to amend, the Court will enter an order dismissing Plaintiffs' RESPA claim.

**F.     Count Six: Negligence Per Se**

Count Six of the Complaint is captioned "Negligence Per Se." As an initial matter, the Court recognizes there is no Alabama tort cause of action known as negligence per se. Rather, negligence per se is merely a subsidiary doctrine of negligence whereby a party is considered negligent as a matter of law because it acted in violation of a statute which was designed to prevent the type of harm that occurred. *See Parker Bldg. Servs. Co. V. Lightsey*, 925 So. 2s 927, 930–31 (Ala. 2005). Despite captioning their relief as "negligence per se," Plaintiffs have failed to identify, either in their Complaint or their brief, any applicable statute or regulation that has been violated. For that reason, Count Six is arguably due to be dismissed.

That said, despite its title, Count Six could be read to be asserting a simple common law negligence claim related to BANA's servicing Plaintiffs' mortgage. For example, Plaintiffs allege that "Defendants negligently initiated a foreclosure on Plaintiff's home" (Doc. 9 ¶ 66) and "negligently handled payments and assessed improper late fees and charges to Plaintiff's account."[4] (*Id.* ¶ 67.) However, even if the Court takes Plaintiffs to be alleging simple common law negligence, the Complaint still fails to state a claim for which relief can be granted.

---

[4] Count Six also contains an allegation that BANA negligently hired and/or trained its representatives. (Doc. 9 ¶ 68.) However, because Count Seven explicitly states a claim for Negligent Hiring/Training, all allegations related to negligent hiring and training will be considered along with Count Seven.

The Court agrees with the Middle District of Alabama's recent assessment that "Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing." *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210–11 (M.D. Ala. 2012); *see also McClung v. Mortgage Elec. Registration Sys., Inc.*, 2:11-CV-03621-RDP, 2012 WL 1642209, at *7–8 (N.D. Ala. May 7, 2012) (following *Blake*); *Jackson v. Countrywide Home Loans, Inc.*, 2:11-CV-327-MEF, 2012 WL 777180, at *6–7 (M.D. Ala. Mar. 7, 2012) (same). As explained in *Blake*, "Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract" because "'a negligent failure to perform a contract . . . is but a breach of the contract.'" *Id.* (quoting *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1956)). "A plaintiff can only sue in tort when a defendant breaches the duty of reasonable care—the duty one owes to another in his day-to-day affairs—when such a breach causes personal injury or property damage." *Id.* (citing *Vines*, 85 So. 2d at 440).

The court in *Blake* determined that the mortgage servicer's obligations arose from the mortgage and promissory note to which the parties agreed, not from the duty of reasonable care generally owed to members of the public. *Blake*, 845 F. Supp. 2d at 1210. Accordingly, the borrower could not allege a tort claim based on negligent servicing of the mortgage. *Id.* Here, Plaintiffs allege that BANA "negligently handled

payments and assessed improper late fees and charges" to Plaintiffs' mortgage account. Inherent in this allegation is Plaintiffs contention that BANA owed Plaintiffs a duty to act reasonably in servicing their mortgage. As in *Blake*, the duties and breaches alleged by Plaintiffs clearly would not exist but for the contractual relationship between the parties. Moreover, there is no duty to the general public to properly service mortgage accounts.

The Court is not holding that negligence and breach of contract claims can never coexist in the same lawsuit. However, because all the duties Plaintiffs contend BANA breached are solely based on contractual agreements between the parties, this Court follows the lead of *Blake* and its progeny, and holds that claims for negligent mortgage servicing are not legally cognizable under Alabama law. Accordingly, Count Six is due to be dismissed.

### F.    Count Seven: Negligent Hiring/Training

Although also asserting a claim sounding in negligence, Count Seven is somewhat different from Count Six. Where Count Six alleged negligence based on negligent servicing of Plaintiffs' mortgage, Count Seven alleges BANA was negligent in its hiring, training and supervision of its employees. "To establish a claim for negligent, reckless or wanton supervision, a plaintiff must show that '(1) the employee

committed a tort recognized under Alabama law, (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice adequately.'" *Shuler v. Ingram & Assocs.*, 710 F. Supp. 2d 1213, 1227–1228 (N.D. Ala. 2010) (quoting *Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009)).

Defendant contends that Plaintiffs abandoned the negligent hiring/training claim by failing to argue in support of it in their responsive brief. While it is true that Plaintiffs did not devote a section of their responsive brief to defending their negligent hiring/training claim, the Court is hesitant to hold that Plaintiffs abandoned their claim given the overlap between this claim and Count Six's claim for negligent mortgage servicing, which Plaintiffs did defend. Thus, the Court will consider the merits of Defendant's arguments for dismissal.

Defendant argues that Plaintiffs' negligent hiring and training claim is due to be dismissed because they have not alleged that BANA's employees committed a cognizable tort under Alabama law, and have not alleged BANA was aware of the unfitness of its employees. It appears that Plaintiffs' negligent hiring/training claim is entirely based on Plaintiffs' contention that BANA employee negligently serviced

their home loan. Plaintiffs argue that "Defendants negligently hired and/or trained its representatives to handle payments resulting in misapplied mortgage payments and improper late fees and charges assessed to Plaintiff's account." (Doc. 14 at 9.) As explained in Section IV.E, *supra*, Plaintiffs' claim for negligent mortgage servicing is not legally cognizable under Alabama law. As such, Plaintiffs claim for negligent hiring/training is also invalid because the non-existent negligent mortgage servicing tort is the only tort allegedly committed by BANA's employees.

### G.    Count Eight: Breach of Fiduciary Duty

Count Eight of the Complaint asserts a state law claim for breach of fiduciary duty. Defendant contends that Plaintiffs' breach of fiduciary duty claim is due to be dismissed for the simple fact that BANA did not owe Plaintiffs a fiduciary duty. Indeed, Defendant points out that "[c]ourts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship which does not impose a fiduciary duty of disclosure on the bank." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 678 (Ala. 2001) (citation omitted). Plaintiffs failed to offer any response to Defendant's argument, and therefore have abandoned their breach of fiduciary duty claim. *See Coal. for the Abolition of Marijuana Prohibition*, 219 F.3d at 1326; *Evans*, 2012 WL 1745610, at *10; *McMaster*, 177 F.3d at 940-41 (11th

Cir.1999). Accordingly, Count Eight is due to be dismissed with prejudice.

### H.    Count Nine: Intentional Infliction of Emotional Distress (Outrage)

Count Nine of Plaintiffs' Complaint asserts a claim for intentional infliction of emotional distress, which is better known within the state of Alabama as the tort of outrage. In order to recover on the tort of outrage, a plaintiff must demonstrate that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Green Tree Acceptance, Inc. v. Standridge*, 565 So.2d 38, 44 (Ala. 1990) (citation omitted).

The Alabama Supreme Court has "consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, [the Alabama Supreme Court] has held in a large majority of the outrage cases reviewed that no jury question was presented." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993) (citing multiple cases). In fact, as the Alabama Supreme Court recently explained, the tort of outrage is "so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment."

*Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011) (quoting *Potts v. Hayes*, 771 So.2d 462, 465 (Ala.2000)).

Distilling Plaintiffs' allegations down, they have effectively alleged that BANA: (1) told Plaintiffs they had been approved for a loan modification but did not provide them with the proper documentation or hold true to these statements; and (2) mishandled or improperly applied mortgage payments after Plaintiffs were already in default.  These allegations are simply not comparable to the three contexts in which the Alabama Supreme Court has permitted outrage claims to go before a jury. Unsurprisingly, several federal courts have dismissed outrage claims based on similar allegations of mortgage servicing deficiencies. *See, e.g.*, *Jackson v. Countrywide Home Loans, Inc.*, 2012 WL 777180, at *8 (M.D. Ala. Mar. 7, 2012) ("Plaintiff's tort of outrage claim, which is related to Defendants' alleged debt collection efforts and which does not fall into one of the presently recognized contexts in which a tort of outrage claim is appropriate, is due to be dismissed."). For these reasons, Plaintiffs' outrage claim is due to be dismissed.

## V.     Conclusion

For the foregoing reasons, BANA's Motion to Dismiss (Doc. 10) is due to be GRANTED in part, DENIED in part, and partially DEFERRED to allow Plaintiffs an

opportunity to amend their Complaint. A separate order will be entered consistent with this opinion.

Done this 21st day of May 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]